UNITED STATES of America Plaintiff

v.

Rev. Lester MCGRATH–ANDINO Defendant

No. CRIM. 00–523(SEC).

United States District Court, D. Puerto Rico.

April 23, 2001.

Jorge E. Vega–Pacheco, Chris Gramissiane, U.S. Attorney's Office District of P.R., Criminal Division, San Juan, PR, for Plaintiff.

Linda Bachiel, San Juan, PR, for Defendant.

### ORDER

CASELLAS, District Judge.

Pending before the Court is Defendant Rev. McGrath–Andino's "Proffer with Re-

spect to Defense of 'Religious Disobedience.'" (Docket # 19).[1] Through this motion the Defendant admits that he entered Navy lands on Vieques without permission, but he asserts that he did so for a purpose "not prohibited by law or lawful regulation" as provided by 18 U.S.C. § 1382. Instead, he argues that he entered Camp García on Vieques Island obeying religious doctrine, policy and directives to protect life in Vieques, and to provide pastoral assistance to a group of persons engaged in a peaceful, symbolic act designed to protest the Navy's use of lands in Vieques. His legal argument is that the First Amendment to the U.S. Constitution protects the kind of conduct he engaged in because he was following religious doctrines and directives. For that purpose he offered evidence which would show the nature of the alleged health problems caused upon the Vieques population by Navy bombings. In addition, he submitted a proffer of evidence showing the religious nature of his assistance to protesters in Vieques, and of various church proclamations rejecting the Navy presence on the Island of Vieques.

## I. Legal Analysis

 Defendant's sketchy legal argument concentrates on two issues: first, the relevancy of his purpose in entering Camp García as an element of the offense, and second, the purported protection of his activities in Camp García by the First Amendment to the U.S. Constitution. On the first issue, the Court finds that Defendant's argument is flawed. The Defendant has relied in the reference made by the applicable statute and regulation[2] and by the Information[3] to the "purpose" of the entry, to argue that his purpose in entering Camp García is "at least" relevant to his possible conviction. (Docket # 19 at 18–9). This argument is unavailing however, since the purpose of the illegal entry is irrelevant for a conviction under 18 U.S.C. § 1382 and 32 C.F.R. § 770.38. *See United States v. Parrilla Bonilla,* 648 F.2d 1373, 1377(1st Cir.1981) ("We conclude, in essential agreement with virtually every other court that has considered the issue, that the requisite prohibited 'purpose' under section 1382 can consist of unauthorized entry itself, and that no 'specific intent,' in the strict sense, to violate the law or regulation prohibiting such entry need be shown."). Indeed, the only required "purpose" for a conviction under 18 U.S.C. § 1382 is that "the defendant had notice of the prohibition of entry upon the military reservation, yet entered anyway." *Id.* at 1378. The notice of the prohibition of entry is undisputed here because the Defendant has admitted to it in filing his proffer for a First Amendment defense.

1. The Government filed a response to this motion on February 9, 2001. (Docket # 20).

2. 18 U.S.C § 1382 prohibits anyone "within the jurisdiction of the United States, [to go] upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, **for any purpose prohibited by law or lawful regulation.**" This statutory provision is supplemented by 32 C.F.R. § 770.38 which provides that:
 Except for duly authorized military personnel and civilian employees, including contract employees, of the United States in the performance of their official duties, entry upon any U.S. Navy installation or property in Puerto Rico at anytime, **by any person for any purpose whatsoever without the advance consent** of the Commanding Officer of the installation or property concerned, or an authorized representative of that Commanding Officer, is prohibited.

3. In this case, the Information charged the Defendant with "knowingly and unlawfully go[ing] upon [Camp García] for any purpose prohibited by law or lawful regulation ... without first having obtained permission from the Commanding Officer as required by the aforesaid regulations." (Information, Docket # 1).

Therefore, there is no question that Defendant satisfies the illegal purpose required by 18 U.S.C. § 1382.

■ Defendant's second legal argument is also unsuccessful because the First Amendment Free Exercise Clause, U.S. Const. amend. I, has never been interpreted by the Supreme Court to effectively excuse a religious person from compliance with laws that prohibit certain criminal conduct, particularly when the criminal law is generally applied and valid. *Employment Division, Department of Human Resources of Oregon, et. al. v. Smith*, 494 U.S. 872, 878–879, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In *Employment Div.*, the Plaintiffs were discharged from work for using peyote, a drug substance, during a Native American religious ceremony. They sought unemployment benefits from the State of Oregon, but were denied on grounds that their discharge was for work-related "misconduct." The Supreme Court held that the Free Exercise Clause permits the State to prohibit sacramental peyote use and thus to deny unemployment benefits to persons discharged for such use. The Supreme Court stated: "We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate. On the contrary, the record of more than a century of our free exercise jurisprudence contradicts that proposition." *Id.* Quoting Justice Frankfurter in *Minersville School Dist. Bd. of Ed. v. Gobitis*, 310 U.S. 586, 594–595, 60 S.Ct. 1010, 84 L.Ed. 1375 (1940), the Supreme Court stated: "Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs. The mere possession of religious convictions which contradict the relevant concerns of a political society does not relieve the citizen from the discharge of political responsibilities (footnote omitted)." *Employment Div.*, 494 U.S. at 879, 110 S.Ct. 1595. In fact, as far back as 1879, the Supreme Court had already ruled that:

> Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions they may with practice ... Can a man excuse his practices to the contrary because of his religious belief? To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself.

*Id.* (quoting *Reynolds v. United States* 98 U.S. 145, 166–7, 25 L.Ed. 244 (1878)). This, the Court here cannot do. The Defendant does not contest, and it is not in dispute that both 18 U.S.C. § 1382 and 32 C.F.R. § 770.38 are content-neutral and generally applied. *See United States v. Albertini*, 472 U.S. 675, 687, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985) (referring to 18 U.S.C. § 1382, the Supreme Court stated that "Section 1382 is content-neutral and serves a significant Government interest."). Thus, the Court finds that although Rev. McGrath's moral and religious convictions are commendable, they are neither relevant for a conviction, nor constitutionally protected. As such, Rev. McGrath's proffer, (Docket # 19), is **DENIED**.

**SO ORDERED.**